HAYDÉE NEVARES LANDRÓN, Plaintiff and Appellee, *v.* ALFONSO E. DELGADO FAJARDO, Defendant and Appellant.

No. 8852. Argued April 12, 1944.—Decided May 16, 1944.

*A. Quirós Méndez* for appellant. *Pedro Amado Rivera* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The sole controversy to be decided in this case is whether the effect of a stipulation filed by the parties wherein the

defendant bound himself to give monthly support to his two-year old daughter, should be suspended on the ground that the mother, who obtained the *patria potestas* and custody over her by virtue of a divorce decree, left Puerto Rico with the girl in violation of an order of court. The facts are as follows:

After the divorce had been decreed, the parties submitted the following stipulation on November 21, 1942:

"1. That both parties accept as final and binding the judgment of divorce rendered by this Hon. Court in the above-entitled case on October 30 of the present year, the defendant waiving his right of appeal therefrom.

"2. That in compliance with the obligation imposed on the defendant by the Civil Code, the defendant, with the consent of the plaintiff, binds himself to give to his minor daughter Gloria Elena Delgado Nevares, who is under the *patria potestas* of the plaintiff, and as support for the plaintiff, FIFTY-FIVE DOLLARS ($55) monthly beginning on November 1st of the present year, which shall be sent to the plaintiff at her home by money-order within the first five days of each month.

"Wherefore, the appearing parties pray the court to approve this stipulation and to render judgment accordingly without special pronouncement of costs."

Although said order of the court approving said stipulation does not appear from the records in the judgment rendered by the court, in support of the order appealed from it is stated that said order was issued on December 3, 1942.

On November 27, 1942, the lower court, on motion of the defendant, and in accordance with the evidence introduced, issued an order establishing family relations between the defendant and his daughter, and fixing certain days and hours on which plaintiff should send the girl to the father.

On March 24, 1943, after the parties were heard on a motion of defendant, the court rendered an order, the dispositive part of which reads as follows:

". . . . the court forbids the latter (the plaintiff) from taking her daughter Gloria Elena Delgado Nevares outside of Puerto Rico

without permission of this court and warns her that she will be punished for contempt of court if she disobeys this order.'' (Parenthetical matter supplied.)

On September 13, 1943 the defendant filed a motion for "modification of an order for giving support" wherein, after referring to the above-mentioned actions, he alleged the following:

"That for more than two weeks the defendant had been trying to locate his minor daughter in order to comply with said order of the court and also with the purpose of seeing her and demanding compliance on plaintiff's part with the above-mentioned order of November 27, 1942, and according to his information and belief the plaintiff first moved to the town of Guaynabo and recently has left the Island of Puerto Rico and gone to the United States, taking with her the minor child without notifying the defendant who at present does not know her whereabouts.

"That this action on the part of the plaintiff is clearly contempt of the order of court and plaintiff has committed the same with the purpose of infringing defendant's rights.

"For which reason the defendant now prays the court that until said minor returns to the Island of Puerto Rico he be relieved from complying with said order of support."

The plaintiff through her attorney opposed this motion and alleged in its pertinent part as follows:

"That the plaintiff felt bound and compelled under special circumstances to make this trip and to separate the daughter from her father; that she is now with her, in a safe place protected and defended better than if she were in Puerto Rico; because the defendant took the child at one o'clock in the afternoon and often brought her back around nine, ten and twelve o'clock at night; that the plaintiff made the trip in question for her own health and the child's, who for sometime has been suffering from illness, frequent colds, and liable to get pneumonia; that it had not been for the opportunity, advantage, and need of such a trip the plaintiff would, under no circumstances, have taken such a step for she has a high respect for justice and believes that every citizen should have recourse thereto in order to settle any controversy."

The plaintiff further prayed that the payment for support be increased to $125 monthly.

After the parties were heard, the lower court rendered judgment dismissing defendant's motion. The latter contends on appeals that "the judgment is contrary to law . . . inofficious since by its terms it can not be complied with . . . and incomplete because it suggests but does not afford the proper remedy of equity." Even though the appellant divides and subdivides the question of law which he raises in different "classes," "species," and "glosses," the only question to be decided, as we have said, is whether or not the defendant is bound to continue the payments for the support of his daughter two years of age, although she was taken to New York by the plaintiff in violation of an order of court.

█ The lower court decided that since the case was not covered by §§149 and 150 of the Civil Code [1] and since the father is bound to give support to his daughter, pursuant to §§143 and 153 of the same code, such obligation "existed and subsisted whether or not said stipulation were filed" by the parties, since it only served to keep the court from investigating the income of the father and the necessities of the recipient in order to determine the amount of the payment. It therefore refused to apply the doctrine laid down

---

[1] "Section 149.—The obligation to give support ceases with the death of the person obliged to give it, even when given in fullfilment of a final judgment.

"The right to receive support cannot be relinquished or transmitted to a third party. Neither shall such support be set off against any amount owing by the recipient to the person obliged to give it."

"Section 150.—The obligation to give support shall also cease:

"1. With the death of the recipient.

"2. When the fortune of the person obliged to give it shall have been reduced so that he can not do so without disregarding his own needs and those of his family.

"3. When the recipient is capable of working at a trade, profession or industry, or has obtained employment or bettered his fortune, so that he does not stand in need of the amount given for support.

"4. When the recipient, whether or not a forced heir, shall have committed any of the offenses which may be a cause for disinheritance.

"5. When the recipient is a descendant of the person obliged to give support and the necessity therefor arises from wrong conduct or lack of application to work, during the time such cause exists."

by the American decisions to the effect that if one of the spouses, in violation of the agreement entered into with the other spouse, removes his minor child to another state, thus depriving the other spouse, in violation of the agreement, from having family relations with his child, said violation, whether or not the agreement has been approved by the court, relieves the spouse who is bound thereby from making further payments for the support of the child. See Annotation in 105 A.L.R. 901.

We are of the opinion that the lower court did not err in deciding the question raised. The agreement of the parties only served to fix the amount of the payment for support which the defendant bound himself to furnish to his daughter. It is not and it could not be conditioned on plaintiff's allowing the defendant to have family relations with his daughter. These relations were determined and fixed by the court in an independent proceeding and they had nothing to do with the obligation imposed by law on the defendant to support his daughter. As to the violation on plaintiff's part of the order of the court forbidding her to take the child out of Puerto Rico, plaintiff herself should be held responsible, in the proper proceeding, but not her daughter, a minor, who at no time has participated in her mother's actions. We can not hold that a child of two years of age should suffer the consequences of such actions. The Civil Code imposes the duty on the father and he, in anticipation thereto and with plaintiff's consent, fixed the amount of the payment for support which he had to send to his daughter at plaintiff's domicile. When the order approving said stipulation was rendered by the lower court, said domicile was at San Juan. The fact that she now resides in New York does not change the legal situation as to the father's obligation to support his daughter. Said obligation has not ceased.

The appellant contends that the stipulation signed by the parties is a bilateral contract and that, therefore, he is

not bound to make further payments to his daughter until plaintiff brings her back to Puerto Rico. In our opinion appellant is wrong. It is true that the stipulation binds the parties subscribing the same to compliance therewith, but the one signed in this case did not contain, as we have already said, any condition as to whether the support to which defendant's daughter was entitled should cease if the plaintiff did not comply with the order of the court establishing family relations between the defendant and the child. On the contrary, the stipulation itself was based on the acknowledgment that the defendant made, in anticipation of the duty which the law imposed on him, stating: "That in compliance with the obligation imposed on the defendant by the Civil Code, the defendant . . . binds himself to give to his minor daughter . . ."

Nor was it proper, as sought by the appellant, that the lower court in considering his motion should deprive the plaintiff of the custody of her daughter and grant said custody to the defendant. That was not the purpose of the motion. The legal question of the deprivation of the *patria potestas* was not raised in the allegations of the motion nor sought by the defendant. Whether or not said question should be raised in a motion or in an ordinary action is a matter which is not before us now and as to which we give no opinion. Cf. *Cabassa* v. *Bravo,* 27 P.R.R. 857.

The order appealed from will be affirmed.